**CENTRAL OREGON HOSPITAL DISTRICT, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. No. 88–6503–JO.**

United States District Court, D. Oregon.

Feb. 26, 1991.

Edward P. Fitch, Bryant, Emerson & Fitch, Redmond, Or., Margaret M. Manning, Weissburg & Aronson, Inc., Los Angeles, Cal., for plaintiff.

Judith D. Kobbervig, U.S. Attys. Office, Portland, Or., Evelyn C. McChesney, U.S. Atty., Sp. Asst., Seattle, Wash., for defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

This action requires judicial review of a Medicare reimbursement regulation for sole community hospitals (SCH) promulgated by the Secretary of Health and Human Services (Secretary). Pursuant to 42 C.F.R. § 412.92(a)(3), the Secretary denied plaintiff's Central Oregon District Hospital (CODH) sole community hospital status under the Medicare prospective payment system for the fiscal years ending June 30, 1986 and June 30, 1987. Plaintiff concedes that the decision was proper, but challenges the validity of 42 C.F.R. § 412.92(a)(3) as codified in 1986. Defendant has moved for summary judgment. Plaintiff has cross-moved for summary judgment. The issue before the court is whether plaintiff's application for SCH status was denied under an improper regulation issued by the Secretary. The court has jurisdiction under 42 U.S.C. § 1395oo (f)(1) (1988).

*Background*

Prior to 1983, Congress provided that hospitals would be reimbursed for the services they provided to Medicare patients based upon the lower of the hospitals' "reasonable costs" or their "customary charges." 42 U.S.C. § 1395f(b) (1988). Congress authorized the Secretary to establish limits on the amount of costs which would be considered reasonable. Social Security Amendments of 1972, Pub.L. No. 92-603, § 223, 86 Stat. 1329, 1393 (codified as amended at 42 U.S.C. § 1395x(v)(1) (1988)). A SCH was exempt from the limits and defined by regulation as "a hospital which, by reason of factors such as isolated location or absence of other hospitals, is the sole source of such care reasonably available to beneficiaries." 42 C.F.R. § 405.460(e)(1) (1981) (currently codified at 42 C.F.R. § 413.30(e)(1) (1989)).

In 1983, Congress amended the method of paying hospitals under the Medicare program. Congress changed the reimbursement method to a prospective payment system, but retained a favorable payment schedule for SCHs. Social Security Amendments of 1983, Pub.L. 98-21, § 601, 97 Stat. 65, 149 (codified as amended at 42 U.S.C. § 1395ww(d) (1988)). Congress also defined a SCH in the statute itself as:

a hospital that, by reason of factors such as isolated location, weather conditions, travel conditions, or absence of other hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to individuals in a geographical area who are entitled to benefits under part A.

42 U.S.C. § 1395ww(d)(5)(C)(ii) (1988).

The Secretary then promulgated the regulation at issue in this action, 42 C.F.R.

§ 412.92(a), which more specifically defined a SCH for prospective payment purposes. The regulation stated:

> (a) *Criteria for classification as a sole community hospital.* HCFA [Health Care Financing Administration] classifies a hospital as a sole community hospital if it is located in a rural area (as defined in § 412.62(f)), and meets one of the following conditions:
>
> (1) The hospital is located more than 50 miles from other like hospitals.
>
> (2) The hospital is located between 25 and 50 miles from other like hospitals and meets one of the following criteria:
>
>> (i) No more than 25 percent of the residents or, if data on general resident utilization are not available, no more than 25 percent of the Medicare beneficiaries in the hospital's service area are admitted to other like hospitals for care;
>>
>> (ii) The hospital has fewer than 50 beds and the intermediary certifies that the hospital would have met the criteria in paragraph (a)(2)(i) of this section were it not for the fact that some beneficiaries or residents were forced to seek care outside the service area due to the unavailability of necessary specialty services at the community hospital; or
>>
>> (iii) Because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least one month out of each year.
>
> (3) The hospital is located between 15 and 25 miles from other like hospitals

but because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least one month out of each year.

42 C.F.R. § 412.92(a) (1986).

CODH is a 67–bed general acute care hospital located in Redmond, Oregon. There are three hospitals with 50 miles of CODH. Pioneer Memorial Hospital is a 35–bed general acute care hospital located in Prineville, Oregon, 18.5 miles from CODH. St. Charles Medical Center is a 164–bed regional referral center located in Bend, Oregon, 21 miles from CODH. Mountain View District Hospital is a 37–bed general acute care hospital located in Madras, Oregon, 28 miles from CODH.[1]

Because CODH is located within 25 miles of other facilities, the Secretary reviewed CODH's request for SCH status under § 412.92(a)(3). Neither topography nor weather prevented residents in CODH's service area from going to the other facilities for thirty consecutive days each year. The Health Care Financing Administration (HCFA) therefore denied SCH status based upon the fact that CODH was within 25 miles of other like facilities.

Plaintiff agrees that it did not satisfy the requirements of § 412.92(a)(3). Plaintiff claims, however, that § 412.92(a)(3) is substantively invalid, is arbitrary and capricious, and was not promulgated pursuant to the notice and comment procedures of the Administrative Procedure Act, 5 U.S.C. § 553.[2]

---

**1.** The Secretary granted both Pioneer Memorial Hospital and Mountain View District Hospital SCH status under the prior cost-based regulations. Hospitals with such prior SCH designations continue to be considered SCHs with respect to the prospective payment system. *See* 42 C.F.R. § 412.92(b)(5) (1989). As a regional referral center, St. Charles Medical Center is similar to an urban hospital, providing various complex services. Regional referral centers also receive favorable reimbursement amounts from Medicare. *See* 42 U.S.C. § 1395ww(d)(5)(C)(i) (1988); 42 C.F.R. § 412.96 (1989).

**2.** Plaintiff's complaint states that:

1) § 412.92(a)(3) is substantively invalid because it improperly restricts the statutory definition of SCH found at 42 U.S.C. § 1395ww(d)(5)(C)(ii),

(2) that § 412.92(a)(3) is arbitrary, capricious, and an abuse of discretion under 5 U.S.C. § 706(2)(A) because no hospital in the continental United States can qualify as a SCH under the criteria established, the definition is improperly more narrow than the definition used for limits on reasonable costs, and the Secretary failed to consider whether there were other, less restrictive criteria, and

(3) notice and comment procedures of the APA, 5 U.S.C. § 553, were violated because the Secretary failed to provide an adequate basis and purpose statement for the criteria for becoming

## Standard of Review

The United Supreme Court has noted that when Congress explicitly delegates to the Secretary the authority to define terms in the Social Security Act, and thus the Medicare program,[3] the Secretary's definitions, when subject to judicial review, are entitled to " 'legislative effect.' " *Schweiker v. Gray Panthers*, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (citation omitted). Nevertheless, courts must still determine whether the Secretary " 'exceed[ed] his statutory authority' and that the regulation is not arbitrary or capricious." *Id.* at 44, 101 S.Ct. at 2640 (citation omitted). *See also Bowen v. Yuckert*, 482 U.S. 137, 145, 107 S.Ct. 2287, 2293, 96 L.Ed.2d 119 (1987) (" '[w]here, as here, the statute [Social Security Act] expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious' ") (citation omitted).

The 1983 statute expressly lists certain factors which Congress intended the Secretary to use, "factors such as isolated location, weather conditions, travel conditions, or absence of other hospitals (as determined by the Secretary)." 42 U.S.C. § 1395ww(d)(5)(C)(ii) (1988). The phrase "as determined by the Secretary" indicates that Congress delegated to the Secretary the authority to define and apply the factors. Court review is thus limited to determining whether the Secretary's action in promulgating the regulation was arbitrary and capricious.

## Arbitrary and Capricious Standard

Pursuant to 5 U.S.C. § 706(2)(A) (1988), courts shall "hold unlawful and set aside agency action, findings and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." "Review under the 'arbitrary and capricious' standard is narrow, and a court may not substitute its judgment for that of the agency." *Sierra Pacific Indus. v. Lyng*, 866 F.2d 1099, 1105 (9th Cir.1989) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983)). According to the United States Supreme Court,

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n, supra*, 463 U.S. at 43, 103 S.Ct. at 2867.

## Congressional Intent

The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). However, "if the Secretary's regulations are found to deviate from congressional will, either on their face or as applied, they must be invalidated as contrary to law." *Regents of the Univ. of Cal. v. Heckler*, 771 F.2d 1182, 1187 (9th Cir.1985).

In determining whether a challenged regulation is valid, a reviewing court must first decide if the regulation is consistent with congressional intent as expressed in the statutory language. " 'If the statute is clear and unambiguous that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' " *K Mart Corp. v. Cartier*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) (citations omitted); *Lyng, supra*, 866 F.2d at 1105 ("Where review involves an agen-

---

a SCH and did not consider reasonably obvious alternatives to the rule.
Complaint at 10–11.

3. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (1988), is commonly known as the Medicare program.

cy's construction of the statute it administers, the court must first give effect to the unambiguously expressed intent of Congress."). *See also United States v. Hoflin,* 880 F.2d 1033, 1037 (9th Cir.1989) (if language is plain and meaning clear, statutory construction at an end). However, where an ambiguity exists, "a foray into the realm of legislative history [is] necessary." *United States v. 594,464 Pounds of Salmon,* 871 F.2d 824, 827 (9th Cir.1989).

Plaintiff argues that § 412.92(a)(3) is arbitrary and capricious because it defines a SCH more narrowly than the pre–1983 cost-limit regulation in violation of congressional intent. The essence of plaintiff's complaint is that the regulation promulgated by the Secretary directly conflicts with what Congress intended when it amended the method of reimbursing hospitals in 1983. In determining legislative intent, plaintiff argues the court can look beyond the statutory language to the legislative history because the language of the statute is not clear on its face.

Plaintiff first notes that the statute uses the language "factors such as" and does not exclusively list the determining factors for SCH status. *Cf. In re Mark Anthony Constr.,* 886 F.2d 1101, 1106 (9th Cir.1989) ("In construing a statute, the use of a form of the word 'include' is significant, and generally thought to imply that terms listed immediately afterwards are an inexhaustive list of examples rather than a bounded set of applicable items.").

Plaintiff also notes that the language in the 1983 statute is very similar to the language of the regulation used to determine sole community status under the cost-based reimbursement procedures in effect prior to 1983. In the 1983 statute, Congress looked at factors "such as isolated location, weather conditions, travel conditions or absence of other hospitals" to determine SCH status. *See* 42 U.S.C. § 1395ww(d)(5)(C)(ii) (1988). In the pre–1983 regulation, the Secretary looked at factors "such as isolated location or absence of other hospitals" to

determine SCH status. *See* 42 C.F.R. § 413.30(e)(1) (1989). Both the statute and the regulation used these factors to define those hospitals which could provide "reasonably available" care. Plaintiff argues that when Congress used the phrases "isolated location" and "absence of other hospitals" in the 1983 statute, it intended to incorporate the prior meaning of those terms.

Prior to 1983, the HCFA issued two intermediary letters (I.L.) which listed determining factors for SCH status pursuant to the pre–1983 regulation.[4] According to I.L. 74–22, "[g]enerally ... a hospital located within a 25 mile radius of a like facility ... can [not] be found to qualify for a sole community hospital exemption." [1974 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 27,044, at 10,423, 10,426 (July 1974). The letters, however, also listed a variety of factors to be used in determining SCH status. The letters listed such determining factors as normal commuting distance, travel time, availability of public transportation, the extent to which persons travel to other hospitals, *id.* at 10,425–26, as well as

1) the type and size of the hospital;

2) the geographic boundary of the hospital's service area;

3) the population size of the hospital's service area and the general distribution of this population throughout his service area;

4) the hospital admitting patterns of physicians in practice in the hospital's service area, i.e. to what extent do these physicians admit residents of the hospital's service area to the nearest like facilities; and

5) the identity, location and size of the nearest like facilities in or with service areas adjacent to the hospital's service area.

I.L. 74–17, [1978 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 28,972, at 9696, 9698 (Apr.1978). I.L. 74–17 also listed a series of unusual local circumstances

---

**4.** Plaintiff explains in its brief that intermediary letters are administrative guidelines that bind the agency's action. Defendant notes that these

guidelines are not binding on the Provider Reimbursement Review Board [PRRB], an independent review board, or the courts.

which could lead to isolation of the hospital for purposes of SCH designation.

Examples of unusual local circumstances include, but are not limited to, adverse topographical conditions, extended periods of adverse weather conditions, and hospital admitting patterns of physicians in practice in the hospital's service area. *Id.* at 9697.

Prior to the adoption of the 1983 statute, hospitals within 25 miles of each other were granted SCH status where some of the isolating factors listed in the intermediary letters were present. *See, e.g., Graham Hosp. Ass'n v. Schweiker*, [1983–2 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 32,837, at 9209, 9210–11 (C.D.Ill. Mar. 9, 1983) (physician admitting practices and patterns of actual hospital use isolate hospital where six other like facilities within 23 to 45 miles and no one in service area more than 21 miles from one of these facilities), *aff'd sub nom. Graham Hosp. Ass'n v. Heckler*, 739 F.2d 285 (7th Cir.1984)[5]; *Hamilton Memorial Hosp. v. Schweiker*, [1982 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 32,109, at 10,324, 10,326 (N.D.Ga. June 30, 1982) ("[p]hysician admitting practices may effectively 'isolate' a hospital and are a relevant factor for consideration under the regulation" where other facilities within 11.2, 22.8, and 25.9 miles); *Midland Hosp. Center v. Blue Cross Ass'n*, [1980 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 30,364, at 9298 (Provider Reimbursement Review Board [PRRB] Hearing Nov. 28, 1979), *aff'd*, [1980 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 30,438, at 9698 (HCFA Deputy Administrator Decision Jan. 27, 1980) (nearest facilities within 19 and 24 miles but SCH status granted based upon fact beneficiaries rarely availed themselves of services provided in nearest like facilities). *See also Tillamook County Gen. Hosp. v. Blue Cross Ass'n*, [1981–1 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 30,782, at 9387 (HCFA Deputy Administrator Decision Aug. 22, 1980). The HCFA Deputy Administrator reversed the PRRB and granted SCH status based upon weather, topographical conditions, and pattern of patient usage where the nearest facility was within 23.5 miles. The Administrator concluded that there was "an absence of other providers of the same type reasonably accessible to the residents of the Tillamook community." *Id.* at 9389.

Thus, at the time Congress defined SCH status in the 1983 statute, it was well established that hospitals within 25 miles of each other could be granted SCH status based upon other factors besides distance, topography or weather, the only factors adopted by the Secretary pursuant to 42 C.F.R. § 412.92(a)(3). However, the record shows that, under pre–1983 cost-based reimbursement, decisionmakers reached the conclusion that hospitals could be in an "isolated location" or that there was an "absence of other hospitals" based upon additional factors such as physician admitting practices and patient usage.

As plaintiff points out, Congress used the same phrases, "isolated location" and "absence of other hospitals," in the 1983 statute establishing prospective payment reimbursement. Plaintiff therefore contends Congress intended that the Secretary use the same factors to determine SCH status for prospective payment reimbursement as the Secretary did for cost-based reimbursement.[6] Consequently, plaintiff

---

5. In *Graham*, the Seventh Circuit noted that although "I.L. 74–22 states that a hospital located within a 25–mile radius of a like facility generally cannot be found to qualify for an SCH exemption, this guideline is not conclusive." 739 F.2d at 289. The Ninth Circuit specifically adopted the Seventh Circuit's analysis in *Graham. See St. Elizabeth Community Hosp. v. Heckler*, 745 F.2d 587, 594 (9th Cir.1984) (court agreed with Seventh Circuit's analysis that hospital entitled to SCH status "largely because of the restrictive admitting practices of physicians, even though another hospital facility was locat-

ed within 21 miles of the hospital seeking the exemption").

6. Defendant contends that the Secretary's policy was to deny SCH status to hospitals within 25 miles of each other and the PRRB and the courts, rather than the Secretary, allowed hospitals closer than 25 miles to be SCHs. Plaintiff counters that the adjudicatory bodies were relying on the Secretary's intermediary letters as the basis for their decisions and therefore the decisions express agency policy. To the extent the identity of the decisionmaker is even an issue, it

argues that these phrases are ambiguous because they could be construed as incorporating factors based upon prior usage.

As noted above, where there is ambiguity in the language, the court examines the legislative history to determine congressional intent. Defendant argues that the statute contains "ordinary language" and therefore an inquiry into the legislative history is unwarranted. I agree with plaintiff's argument that the phrases "isolated location" and "absence of other hospitals" could be considered as terms of art based upon their prior usage pursuant to the pre–1983 regulation. An examination of the legislative history is therefore necessary.

Plaintiff cites to the following Senate Report:

> The committee is concerned that, in determining which hospitals have been eligible for exceptions and adjustments as sole community providers in the past, the Secretary has applied different criteria in different regions of the country, including some which are very narrow and restrictive. Therefore, the committee expects that the Secretary, in making such determinations for sole community providers under the new prospective payment system, will develop and take into account a much broader range of factors relating to beneficiary access to basic hospital services.
> S.Rep. No. 23, 98th Cong., 1st Sess. 54, *reprinted in* 1983 U.S.Code Cong. & Admin.News 143, 194.

Plaintiff contends this report indicates Congress was aware of the Secretary's past practices under cost-based reimbursement and intended that more, rather than fewer, factors be used in determining SCH status under prospective payment reimbursement. Defendant, on the other hand, argues that this report shows the committee wanted a national, uniform guide for determination of SCH status because the prior cost-limit regulation had not been applied uniformly throughout the country.[7]

Defendant's argument is correct as far it goes. The report does indicate Congress' desire for uniform national standards for determining SCH status. The report, however, notes that the Secretary had applied different criteria in different parts of the country, including some which were "very narrow and restrictive." The report then goes on to say that the committee "*expects*" the Secretary to "develop and take into account a much broader range of factors." S.Rep. No. 23, 1983 U.S.Code Cong. & Admin.News p. 143, *supra* (emphasis added). I find that such a mandate indicates the Secretary should have considered not only the criteria that were used prior to 1983, but also additional new criteria.

Defendant points out that the regulation does include a new, broad criterion—market share, which is an operational measure of all the variables that influence a patient's decision to obtain care at a particular hospital. For example, physician admitting practices, availability of public transportation, and travel time are variables included in market share. *See* 54 Fed.Reg. 36,482 (1989).

To the extent market share meets a congressional desire for broader criteria in the determination of SCH status, it is only found in 42 C.F.R. § 412.92(a)(2). That part of the regulation grants SCH status to a hospital within 25 to 50 miles of a like facility if at least 75% of the residents (or Medicare beneficiaries) in the hospital's service area go to that hospital for care. Section 412.92(a)(3), on the other hand, measures seasonal isolation and includes weather conditions, travel conditions, and the absence of other hospitals, the criteria specifically mentioned in the statute, but it

---

does not change the fact that a variety of factors had been used to determine "isolated location" and "absence of other hospitals" prior to the time Congress defined SCH status pursuant to the 1983 statute establishing the prospective payment reimbursement system.

7. Defendant also cites to a General Accounting Office (GAO) 1982 report that similarly concluded a more uniform nationwide approach needed to be developed. *See* GAO Report on Sec. 223 Hospital Reimbursement Limits, [1983–1 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 32,212, at 9131 (GAO Letter to Senator Max Baucus, HRD–82–109, Aug. 6, 1982).

does not include market share or any other additional criteria.[8]

Plaintiff contends that just because the Secretary may have complied with congressional intent in § 412.92(a)(2) does not excuse his failure to comply with it in § 412.92(a)(3). I agree. Although parts of the regulation may be consistent with congressional intent, the fact of the matter is that plaintiff was denied SCH status solely under § 412.92(a)(3). If Congress intended hospitals within 25 miles of each other to get SCH status based upon a broad range of criteria, it is really irrelevant that the regulation grants hospitals within 25–50 miles of each other SCH status based upon a broad range of criteria, i.e. market share. Section 412.92(a)(3), standing alone, must not be arbitrary and capricious no matter how reasonable other sections of the regulation may be.

*A Reasoned Analysis*

Even assuming, *arguendo*, that § 412.92(a)(3) complies with congressional intent, "the agency must [still] examine the relevant data and articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n, supra,* 463 U.S. at 43, 103 S.Ct. at 2867 (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)); *Lyng, supra,* 866 F.2d at 1105. The court must consider whether the rulemaking decision was based upon a consideration of relevant factors or whether a clear error of judgment was made. *Motor Vehicle Mfrs. Ass'n, supra,* 463 U.S. at 43, 103 S.Ct. at 2867. The court must look at the agency's own contemporary action and may not rely upon the *post hoc* rationalizations of coun-

sel. *Vista Hill Found. v. Heckler,* 767 F.2d 556, 559 (9th Cir.1985).

Furthermore, where an agency changes its course, it "must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from the tolerably terse to the intolerably mute." *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir. 1970) (citations omitted). *See also California v. F.C.C.,* 905 F.2d 1217, 1234 (9th Cir.1990) (agency has broad discretion to implement reasonable policy changes but agency changing its course must supply a reasoned analysis) (quoting *Motor Vehicle Mfrs. Ass'n, supra,* 463 U.S. at 57, 103 S.Ct. at 2874; *Greater Boston, supra*); *Simmons v. I.C.C.,* 829 F.2d 150, 156 (D.C. Cir.1987) ("new rule constituting a departure from past policy or practice amplifies the need for adequate explanation").

Plaintiff argues that the Secretary failed to articulate a reasonable explanation or consider relevant factors in his choice of distance, topography, or weather conditions as criteria for determining SCH status under § 412.92(a)(3). Plaintiff contends the Secretary failed to consider less restrictive criteria and chose criteria that effectively eliminated any hospital from qualifying as a SCH.

The record before the court shows that the Secretary adopted the criteria set forth above to eliminate the inconsistency resulting from the HCFA intermediary letters and to provide "a single set of objective criteria [that] will promote uniformity throughout the nation in designating SCH's." 49 Fed.Reg. 271 (1984). The Secretary explained that the prior HCFA inter-

---

**8.** Section 412.92(a)(1) automatically grants SCH status to hospitals located more than 50 miles from other like hospitals, so market share is not an issue. In 1989, the Secretary reduced the 50 mile criteria to 35 miles. *See* 42 C.F.R. § 412.92(a)(1) (1989). In 1989, Congress made this criteria statutory. Congress redefined a sole community hospital as one "(I) that the Secretary determines is located more than 35 road miles from another hospital, or (II) that, by reason of factors such as the time required

for an individual to travel to the nearest alternative source of appropriate inpatient care (in accordance with standards promulgated by the Secretary), location, weather conditions, travel conditions, or absence of other like hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to individuals in a geographic area who are entitled to benefits under part A." *See* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 6003(e)(1), 103 Stat. 2106, 2143.

mediary letters were broad general program instructions for determining SCH status that led to inconsistent results because they were not binding on the PRRB or the courts. *Id.*

The record also summarizes the criteria for SCH status for hospitals within 15 to 25 miles of each other, namely that due to topography or weather, the other hospitals are "generally not accessible" to the hospital requesting SCH status for more than one month during a 12-month period. 48 Fed.Reg. 39,780 (1983). The hospital requesting SCH status must show "prolonged and predictable inaccessibility" and demonstrate inaccessibility more than one month each year for three consecutive years.[9] *Id.* at 39,781. The Secretary notes that

> [t]he intent of the inaccessibility criteria is to acknowledge that hospitals, which may not be isolated at certain times during the year, may be the sole source of inpatient services available in an area at other times due to prolonged severe weather conditions or other temporary but recurring external conditions.

49 Fed.Reg. 272 (1984). The record explains why the Secretary chose the inaccessibility criteria. The record, however, does not explain that there were different, broader criteria used under the cost-based system for SCHs within 25 miles of each other and why the previous criteria were not used in the current regulation.[10]

Defendant argues that the Secretary did not change his policy but rather adopted new rules pursuant to new statutory authority. Certainly, Congress gave new

statutory authority to the Secretary regarding Medicare reimbursement to SCH hospitals, but the basic policy of reimbursement of SCH hospitals remained. The new statutory authority simply changed the method of reimbursement from a cost-based system to a prospective payment system.

Furthermore, the Secretary recognized that Congress changed a prior policy for reimbursement of SCHs by allowing hospitals classified as SCHs under the prior system to continue to be classified as SCHs under the new system. *See* 49 Fed.Reg. 271 (1984); 42 C.F.R. § 412.92(b)(5) (1989). The fact that the Secretary allowed hospitals to retain their pre-existing SCH status under the new regulations shows that the Secretary was aware of interpretations of SCH status under the pre-1983 statute, and he should have explained why he was no longer going to use those interpretations. The facts belie defendant's argument that there was no policy change. The defendant must supply a reasoned analysis for his actions and he failed to do so.

In addition to the rulemaking record, defendant submits an affidavit by Marilyn Koch, one of the drafters of the regulation at issue, which also purports to explain the rationale behind the adoption of the criteria for § 412.92(a)(3). Ms. Koch states that the drafters' "basic conclusion was that hospitals within 25 miles of another hospital were not isolated at all, and were not the only hospitals reasonably available to Medicare beneficiaries, unless seasonal events such as highways blocked with

9. In 1989, the Secretary revised § 412.92(a)(3) to read that a hospital would qualify as a SCH if "[t]he hospital is located between 15 and 25 miles from other like hospitals but because of local topography or periods of prolonged severe weather conditions, the like hospitals are inaccessible for at least 30 days in each 2 out of 3 years." 42 C.F.R. § 412.92(a)(3) (1989).

10. Defendant insists that the intermediary letters stated a rule that hospitals within 25 miles of each other could not be SCHs. This directly contradicts the decisions discussed above. Furthermore, as previously noted, I.L. 74–22 states that "[g]enerally" hospitals within 25 miles of each other could not be SCHs. Defendant cites

*Cottage Grove Hosp. v. Blue Cross Ass'n,* [1982 Transfer Binder] Medicare and Medicaid guide (CCH) para. 31,822, at 9111 (PRRB Decision Feb. 4, 1982) to support his contention. In *Cottage Grove Hosp.,* however, the PRRB did not look solely at distance, but also considered area utilization statistics. In denying SCH status, the PRRB stated "There is substantial evidence showing a large percentage of the patients from the provider's service area seek acute care service offered by the Eugene area hospitals located 22 or 23 miles from the provider." *Id.* at 9114. The Board concluded that therefore "there were other hospitals of the same type, and ... the provider is not the sole source of care reasonably available to beneficiaries." *Id.*

snow for a protracted period of time made them the only hospitals available." Koch Affidavit at 7. The purpose of § 412.92(a)(3) was to take care of "really rare, extraordinary conditions." *Id.* at 6.

According to the affidavit, there were only two existing research studies on SCH criteria at the time the regulation was drafted. In a General Accounting Office (GAO) letter to Senator Max Baucus,[11] the GAO recommended that HCFA define key terms in its existing intermediary letters and provide a standard approach for evaluation to achieve a more uniform application. As discussed earlier, the intermediary letters incorporated a broad list of factors, including distance, topography, adverse weather conditions, physician admitting practices, and population distribution. And, decisionmakers granted SCH status to hospitals within 25 miles of each other based upon the factors listed in those intermediary letters.

The Report of Regional Administrators' Task Force On Sole Community Hospital Exemptions (Feb. 28, 1983) noted that the current guidelines for determining SCH status, including distance, topography and weather, provided little guidance in determining whether a community in which a hospital was located was "isolated." The Task Force Report recommended simplifying the criteria to look "only at the patterns of hospitalization of patients in the community." Task Force Report at 12. The Task Force Report concluded that the "question of isolation can be answered better by an evaluation of patient behavior as manifested by admissions to the requesting hospitals and neighboring hospitals." *Id.*

Neither of the studies support the drafters' conclusion that hospitals within 25 miles of each other could only be isolated based upon protracted seasonal events, and the affidavit does not explain on what basis the drafters decided that weather (and topography) should be the determining factors. I find that the affidavit and accompanying studies do not meet defen-

dant's burden of providing a reasoned analysis for the regulation.

Plaintiff further argues that § 412.92(a)(3) sets a standard which is virtually impossible to satisfy. Plaintiff contends that only nine roads in the continental United States are closed for thirty consecutive days each year and most of these roads run through national parks or wilderness areas, rather than between hospitals. The Koch affidavit makes reference to one contact between the HCFA staff and a hospital "which said it was within 25 miles of another hospital but was inaccessible because roads were closed due to snow." Koch Affidavit at 6. It is difficult to see how this single contact allowed the Secretary to make a "rational connection between the facts found and the choice made." *Burlington Truck Lines, supra,* 371 U.S. at 168, 83 S.Ct. at 246.

To the extent plaintiff's contention is true, defendant argues that the first two parts of the regulation could stand alone. This begs the question. The court has already noted that § 412.92(a)(3) must meet the arbitrary and capricious standard regardless of whether the other two sections meet that standard. I find that it is inherently arbitrary to promulgate a regulation with which no hospital can comply.

Furthermore, a 35–mile separation now automatically qualifies a hospital for SCH status.[12] Why does less than a 25–mile separation automatically (for practical purposes) disqualify a hospital for such classification. The statute defines a SCH as one that is the "sole source" of services "reasonably available ... in a geographic area." 42 U.S.C. § 1395ww(d)(5)(C)(ii) (1988). The Secretary looks at whether a SCH is the sole source of care and believes that "a hospital located within 25 miles of a like hospital would not be the sole source of care reasonably available unless topography or weather conditions make other hospitals inaccessible at least 1 month per year." 54 Fed.Reg. 36,481 (1989).

However, the research studies on SCH criteria available to the drafters of the

---

**11.** *See supra,* note 7.

**12.** *See, supra,* note 8.

regulation, and discussed above, considered the concept of "community." The GAO report found, *inter alia*, that the term "community" needed to be clarified, and in its recommendations for uniform standards noted that the various HCFA regions "differ widely in the determination of a community's reliance on a provider for care." GAO Report, *supra*, at 9136. In addition, the Task Force Report noted that factors such as distance, topography, and weather were supposed to indicate whether the "community" in which the hospital is located is "isolated." *See* Task Force Report, *supra*, at 12. The Task Force Report concluded that the best way to determine such isolation was to look at the usage of the hospital by residents of the community. *Id.*

What is a community? Certainly Bend, Redmond, and Prineville, Oregon are quite distinct communities. Each city has its own hospital in a generic sense and each hospital has its own permanent staff of medical care providers. Certainly, some care must be transferred out due to lack of staff and facilities in rural communities. But this is a known medical care problem facing the nation. The Secretary must be aware of these facts, but chose instead to lump all separate communities into one if they happen to be within 25 miles of each other. He gives no adequate reason or justification for doing so and thus does not meet the arbitrary and capricious standard.

*Case Law*

There is a paucity of case law in this area. I have found only two cases which address the validity of 42 C.F.R. § 412.92(a)(3). In *Mary Imogene Bassett Hospital v. Bowen*, [1989–2 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 37,831, at 19,842 (N.D.N.Y. Feb. 6, 1989), Judge Cholakis heard arguments similar to those in the case at bar. Plaintiff argued that Congress intended the Secretary to take into consideration factors developed under prior administrative interpretation and case law. The court found that the regulation was invalid on its face and that:

the Secretary's application of the regulation in determining plaintiff's SCH status is too rigid to fall within the Congressional intent as indicated in the Medicare Act and its legislative history.... This history and applicable statute demonstrate an intent to liberalize a hospital's ability to qualify for SCH status and not to limit it.

*Id.* at 19,848 (Transcript of Proceedings).

The government argued that each component of the regulation had to be looked at as part of the whole. The court, however, noted that SCH status could be denied solely on the basis of § 412.92(a)(3). *Id.* In its order, the court held that "42 C.F.R. § 412.92(a)(3), as written, establishes conditions which are to [sic] rigid to fully meet Congressional intent as expressed in the enabling statute at 42 U.S.C. § 1395ww(d)(5)(C)(ii). *Id.* at 19,849. The government did not appeal this decision.

In *A.O. Fox Memorial Hosp. v. Sullivan*, [1990 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 38,364, at 22,065 (N.D.N.Y. Dec. 15, 1989) (WL 153730), Judge McCurn, also a judge in the District Court for the Northern District of New York, came to a contrary conclusion. In a case similar to the one at bar, the plaintiff argued that § 412.92(a)(3) was invalid " 'because it is more restrictive than Congress intended and because it is arbitrary and capricious.' " *Id.* at 22,067. The court noted that it "must determine whether this regulation was invalid in 1986 as applied to [plaintiff], keeping in mind that Judge Cholakis' subsequent invalidation of the regulation is persuasive, but not binding on this court." *Id.*

Judge McCurn, referring to the same GAO report discussed above, noted that the report advocated nationwide uniformity in the area of establishing criteria for evaluating applications for SCH status. *Id.* at 22,068. The court found that a "reading of the regulation issued by the Secretary demonstrates that each of the criteria mentioned in the GAO Report are included in the regulation promulgated by the Secretary." *Id.* The court then cited to the entire regulation, 42 C.F.R. § 412.92(a).

The court went on to note that the statute clearly directs the Secretary to consider specific factors in determining SCH status. Based upon this clear directive, the court felt it did not need to reconstruct legislative intentions by examining the statute's legislative history. Using a deferential standard of review, the court then looked at the entire regulation at issue and found that

> 42 C.F.R. § 412.92(a) was not arbitrary, capricious, an abuse of discretion, or otherwise invalid as applied to [plaintiff's] application for SCH status in 1986. The regulation as it existed then addressed every factor the enabling statute deemed relevant in determining whether a hospital should be afforded sole community hospital status.

*Id.* at 22,069. The court also noted that "[a]ny additional factors, or definitions of the listed factors, are to be " 'determined by the Secretary.' " *Id.* (quoting 42 U.S.C. § 1395ww(d)(5)(C)(ii)).

*Conclusion*

I find Judge Cholakis' reasoning more persuasive than that of Judge McCurn. The Secretary's promulgation of 42 C.F.R. § 412.92(a)(3), standing alone, must not be arbitrary and capricious. With that in mind, I find that the Secretary should have considered factors in addition to distance, topography, and weather in promulgating a regulation that determines SCH status for hospitals within 25 miles of each other. I also find that the change from cost-based reimbursement to prospective payment reimbursement was a major policy shift and the Secretary did not adequately explain his reasons for the new regulation or adequately consider whether any hospitals could comply with the regulation.

Based upon the above, I can only conclude that the Secretary did act arbitrarily and capriciously and without good reason in promulgating 42 C.F.R. § 412.92(a)(3) (1986).[13] Plaintiff may not prevail in the

long run if it attempts to qualify under other parts of this regulation, but it has won the first skirmish. Defendant's motion for summary judgment (# 23) is therefore DENIED. Plaintiff's cross-motion for summary judgment (# 33) is GRANTED.

---

13. Plaintiff also alleges that the notice and comment procedures of the APA, 5 U.S.C. § 553, were violated because the Secretary failed to provide an adequate basis and purpose statement for the criteria for becoming a SCH and did not consider reasonably obvious alternatives to the rule. Because the court has found the Secretary's actions arbitrary and capricious, the court does not reach this claim.