**BRADFORD HOSPITAL, d/b/a Bradford Regional Medical Center, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of the Department of Health and Human Services, Defendant.**

**Civil Action No. 95–105.**

United States District Court, W.D. Pennsylvania.

Dec. 24, 1996.

---

Terrence J. O'Rourke, Stephen R. Nash and David W. Thomas, Nash & Company, Pittsburgh, PA, for Plaintiff.

Jessica Lieber Smolar, United States Attorney's Office, Pittsburgh, PA, Jan M. Lindelius, Region III Counsel, Philadelphia, PA, for Defendant.

### *MEMORANDUM OPINION*

McLAUGHLIN, District Judge.

This Court has jurisdiction over this civil action pursuant to 42 U.S.C. §§ 1331 and 1395oo. Bradford Hospital ("Bradford") challenges the validity of the regulations codified at 42 C.F.R. § 412.92(a)(3) which prevent it from being classified as a "sole community hospital." Presently pending before this Court are cross motions for summary judgment. For the reasons stated below, Plaintiff's motion is denied, Defendant's motion is granted, and judgment is entered in favor of the Secretary of the Department of Health and Human Services (the "Secretary").

## I. BACKGROUND

In 1972, Congress authorized the Secretary to promulgate regulations limiting Medicare reimbursements to hospitals. Pub.L. No. 92–603 § 223, 86 Stat. 1329, 1393 (1972). However, Congress made it clear that such limitations should not be applied to providers serving communities with limited access to hospitals. H.R.Rep. No. 231, 92d Cong., 1st Sess. 84 (1971). *See, also,* S.Rep. No. 1230, 92 Cong., 2d Sess. 188 (1972), U.S.Code Cong. & Admin.News 1972, p. 4989. Consistent with this goal, the Secretary's regulations exempted "sole community hospitals" ("SCH") from the reimbursement limitations. The regulations defined an SCH as a hospital that:

by reason of factors such as isolated location or absence of other providers of the same type, is the sole source of such care reasonably available to beneficiaries.

20 C.F.R. § 405.460(f)(4) (1975).

The regulations alone continued to defined when a hospital qualified for SCH status until 1983. In 1983, in order to further cut costs, Congress revamped the method by which hospitals were reimbursed by instituting the "Prospective Payment System" ("PPS"). 42 U.S.C. § 1395ww(d). Rather than reimbursing hospitals the lesser of "reasonable costs" or "customary charges" for services rendered, the PPS method pays hospitals prospectively at a flat rate based on classification of Medicare beneficiaries treated. *Id.* The new reimbursement scheme continued to include an SCH exemption. However, this time, Congress provided a statutory definition of an SCH:

> For purposes of this subparagraph, the term 'sole community hospital' means a hospital that, by reason of factors such as isolated location, weather conditions, travel conditions, or the absence of other hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to individuals in a geographic area who are entitled to benefits under part A.

Pub.L. No. 98–21 § 601(e), 97 Stat. 158 (1983) codified at 42 U.S.C. § 1395ww(d)(5)(C)(ii).

In response, the Secretary promulgated more comprehensive regulations defining when hospitals qualified for SCH status. Under those regulations, a hospital located in a rural area[1] could qualify for SCH status if it fell into one of the following categories:

(1) The hospital is located more than 50 miles from other like hospitals.

(2) The hospital is located between 25 and 50 miles from other like hospitals and meets one of the following criteria:

(i) No more than 25 percent of the residents or, if data on general resident utilization are not available, no more than 25 percent of the Medicare benefi-

ciaries in the hospital's service area are admitted to other like hospitals for care;

(ii) The hospital has fewer than 50 beds and the intermediary certifies that the hospital would have met the criteria in paragraph (a)(2)(i) of this section were it not for the fact that some beneficiaries or residents where forced to seek care outside the service area due to the unavailability of necessary specialty services at the community hospital; or

(iii) Because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least one month out of each year.

(3) The hospital is located between 15 and 25 miles from other like hospitals but because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least one month out of each year.

49 Fed.Reg. 234, 270–72 codified at 42 C.F.R. § 412.96 (1986).

In 1989, the Secretary eased the requirements. The mileage radius to receive a *per se* SCH classification under subpart (1) was reduced to 35 miles and the inaccessibility requirement in subparts (2)(iii) and (3) was reduced to "at least 30 days in each 2 out of 3 years." 54 Fed.Reg. 36,452 and 36,494 (Sept. 1, 1989) codified at 42 C.F.R. 412.92 (1989).

Later that year, Congress passed the Omnibus Budget Reconciliation Act of 1989. The act amended the statutory definition of an SCH to take into consideration travel time and travel conditions to alternate facilities. The new definition provided:

> The term 'sole community hospital' means a hospital that, by reason of factors such as time required for an individual to travel to the nearest alternative source of appropriate inpatient care (in accordance with standards promulgated by the Secretary) location, weather conditions, travel conditions, or the absence of other hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to [Medicare beneficiaries] in a geographic area.

1. A rural area is defined in 42 C.F.R. § 412.83(b). That section is not at issue here.

Pub.L. No. 101–239, § 6003(e), 1989 U.S.C.C.A.N. (103 Stat.) 2106, 2143, codified at 42 U.S.C. § 1395ww(d)(5)(D)(iii)(II).

The Secretary again amended the regulations to comply with the statutory changes, producing the version of the regulation which is at issue here. The version provides:

(a) *Criterion for classification as a sole community hospital.* HCFA classifies a hospital as a sole community hospital if it is located more than 35 miles from other like hospitals, or it is located in a rural area (as defined in § 412.83(b)) and meets one of the following conditions:

(1) The hospital is located between 25 and 35 miles from other like hospitals and meets one of the following criteria:

(i) No more than 25 percent of the residents who become hospital inpatients or no more than 25 percent of the Medicare beneficiaries who become hospital inpatients in the hospital's service area are admitted to other like hospitals located within a 35–mile radius of the hospital, or, if larger, within its service area;

(ii) The hospital has fewer than 50 beds and the intermediary certifies that the hospital would have met the criteria in paragraph (a)(1)(i) of this section were it not for the fact that some beneficiaries or residents were forced to seek care outside the service area due to the unavailability of necessary specialty services at the community hospital; or

(iii) Because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least 30 days in each 2 out of 3 years.

(2) The hospital is located between 15 and 25 miles from other like hospitals, but because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inac-

cessible for at least 30 days in each 2 out of 3 years.

(3) Because of distance, posted speed limits, and predictable weather conditions, the travel time between the hospital and the nearest like hospital is at least 45 minutes.

42 C.F.R. § 412.92 (1992).

Bradford applied for SCH status. It conceded that it is located 23.2 miles from the nearest like hospital and that it did not meet the SCH regulatory criterion for hospitals located between 15 and 25 miles of the nearest like hospital. The Health Care Financing Administration ("HCFA") denied its application. Bradford appealed to the Provider Reimbursement Board ("PRB"), challenging the validity of the regulations as arbitrary, capricious and inconsistent with 42 U.S.C. § 1395ww(d)(5)(D)(iii)(II). This challenge was beyond the authority of the administrative review process and the matter was granted expedited judicial review under 42 U.S.C. § 1395oo(f)(1). We now review the validity of the regulations.

## II. STANDARD OF REVIEW

■ When Congress has expressly delegated rule making authority to the Secretary, her regulations are entitled to controlling weight unless they are "arbitrary, capricious or manifestly contrary to the statute." *Chevron v. Natural Res. Def. Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

## III. DISCUSSION

Congress has expressly authorized the Secretary to promulgate the regulations in question under 42 U.S.C. § 1395ww(d)(5)(D)(iii). Two courts of appeals [2] and two district courts [3] have addressed the validity of 42 C.F.R. § 412.92 and have found it to be neither arbitrary and capricious nor manifestly contrary to the statute. Only one district court has held

---

**2.** See, *Clinton Memorial Hospital v. Shalala,* 10 F.3d 854 (D.C.Cir.1993); *Macon County Samaritan Memorial Hosp. v. Shalala,* 7 F.3d 762 (8th Cir.1993).

**3.** See *Public Hospital Dist. No. 1 v. Sullivan,* 806 F.Supp. 1478 (E.D.Wash.1992); *A.O. Fox Memorial Hospital v. Sullivan, Medicare and Medicaid Guide* (CCH) ¶38,364 at 22,068, 1989 WL 153730 (N.D.N.Y.1989).

otherwise, but the reasoning on which that decision rests has been undermined by the appropriate circuit.[4]

## A. Are the Regulations Manifestly Contrary to The Statute?

■ Bradford first argues that the regulation are manifestly contrary to the statute because they are both inconsistent with the statutory language and inconsistent with Congressional intent by failing to consider physicians' admitting patterns when determining SCH status for hospitals that are located between 15 and 25 miles of other like hospitals ("15–25 mile hospitals").

■ When construing the validity of federal regulations against an enabling statute, a court must first look to see if the regulations are inconsistent with the unambiguously expressed intent of Congress. *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781–82. If Congress has spoken, both the court and agency must give effect to the plain language of the statute. *Id.* If Congress has not spoken on the issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

Obviously, the text of the statute does not contain a Congressional directive to the Secretary to include physicians' admitting patterns among the SCH qualification criterion for 15–25 mile hospitals. In fact, the statute uses the phrase "such as" to introduce the list of factors that are relevant for determining SCH status. " '[S]uch as' does not imply that there are necessarily more relevant factors than those Congress enumerated. 'Such as' signifies a broader grant of discretion, one that permits, but does not require, the

Secretary to conclude that there are other factors of the kind specified in the statute that are relevant to the determination she must make." *Macon County Samaritan Memorial Hosp.*, 7 F.3d at 767.

In the absence of a such a directive, Bradford urges us to read one into the statute because Congress chose to use the phrase "sole source of inpatient hospital services reasonably available" when it defined an SCH. Bradford points to a number of pre–1983 decisions holding that restrictive admission patterns could render a hospital a "sole source" of care.[5] Relying primarily on *Fogerty v. Fantasy*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), Bradford argues that Congress ratified and incorporated the pre–1983 judicial definition of "sole source" as embodied by these decisions into the statute because Congress should be presumed to have been aware of them.

However, Bradford reads *Fogerty* too loosely. The section of the *Fogerty* opinion to which Bradford cites is a discussion of *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) wherein the Court held that Congress was presumed to be aware of administrative and judicial interpretations when it re-enacts a statute without change. *Fogerty*, 510 U.S. at 527, 114 S.Ct. at 1029–30 (*citing Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978). *Lorillard* involved the question of whether Congress intended to create a right to a jury trial under the Age Discrimination in Employment Act ("ADEA") when it provided that the relevant portion of the ADEA was to be "enforced in accordance with the 'powers, remedies and procedures' " of specified sec-

---

**4.** In *Central Oregon Hospital Dist. v. Sullivan*, 757 F.Supp. 1134 (D.Or.1991), the district court found the regulations arbitrary and capricious as applied to rural hospitals located within 25 miles of other facilities because they failed to consider factors in addition to those listed in the statute. However, the continued validity of that decision is dubious in light of the Ninth Circuit's reasoning in *San Bernardino Mountains Community Hospital v. Secretary*, 63 F.3d 882 (9th Cir.1995). In *San Bernardino*, the Ninth Circuit held that the regulations were not invalid as applied to an urban hospital because they failed to take into account factors in addition to those listed in the statute. *San Bernardino Mountains Community*

*Hospital*, 63 F.3d at 887. The Court expressly reasoned that "the use of the phrase 'factors such as' reveals that Congress intended to permit (but not require) the Secretary to consider both the named factors and other relevant factors." *Id.*

**5.** *See, e.g., Hamilton Memorial Hospital v. Schweiker*, [1982 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 32,109 (N.D.Ga. June 30, 1982); *Santa Ynez Valley Hosp. v. Blue Cross Ass'n.*, [1978 Transfer Binder], Medicare & Medicaid Guide (CCH) ¶ 29,221 (PRRB July 25, 1978); *St. Elizabeth Community Hosp. v. Heckler*, 745 F.2d 587 (9th Cir.1984); *Graham Hosp. Ass'n. v. Heckler*, 739 F.2d 285 (7th Cir.1984).

tions of the Fair Labor Standards Act ("FLSA"), 81 Stat. 604, 29 U.S.C. § 626(b). *Id.* at 528, 114 S.Ct. at 1030. The Court, in *Lorillard,* found the inference of incorporation particularly appropriate because Congress had exhibited both a detailed knowledge of the judicial interpretations and also a willingness to depart from those decisions in other parts of the statute. *Lorillard,* 434 U.S. at 580, 98 S.Ct. at 869–70.

This case is distinguishable from *Lorillard* for several reasons. First, in *Lorillard,* Congress specifically said that it was incorporating parts of the FLSA into the ADEA. Second, the legislative record actually reflected that Congress had both "detailed knowledge" of the judicial interpretations of the relevant portions FLSA and an intent to incorporate them. *Id.* at 582, 98 S.Ct. at 871. The statute here does not mention the pre–1983 regulations nor has Bradford pointed to anything in the legislative record exhibiting a detailed knowledge of the pre–1983 regulatory provisions or a Congressional intent to ratify any definition which may have emerged from those cases. Bradford's evidence of legislative intent to ratify is a 1983 Senate Legislative Report ("Senate Report") which expressed concern over inconsistent application of "very narrow and restrictive criterion" and stated that the committee "expect[ed] that the Secretary ... will develop a much broader range of factors." S.Rep. No. 23, 98th Cong. & Admin.News 1983, pp. 143, 194. The inconsistent application of narrow criterion with which the committee was concerned is a reference to a 1982 General Accounting Office Report ("GAO Report") about the Denver Regional Office's application of the 25 mile criterion without consideration of the extent to which patients obtained care from other hospitals. *GAO Report on § 223 Hospital Reimbursement Limits* (Aug. 6, 1982), [1982 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 32,212. The Senate Report, at best, shows that the Committee had knowledge of the practices of one regional office as outlined in the GAO Report, not that Congress had detailed knowledge of decisions awarding hospitals within 25 miles of like facilities SCH status.

■ Bradford next argues that the regulations are inconsistent with Congressional intent. This is really a recycled version of Bradford's ratification argument because Bradford wants us to look at the legislative history of the statute to determine whether Congress intended that the Secretary include physicians' admitting patterns among the regulatory criterion governing SCH status for 15–25 mile hospitals by using the phrase "sole source of inpatient hospital services reasonably available."

■ When a court has determined that a statute is clear and unambiguous on its face, the court's review of "legislative history is limited to determining only whether there is a 'clearly expressed legislative intention' contrary to that language, which would require [the court] to question the strong presumption that Congress expresses its intention through the language it chooses." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 433 n. 12, 107 S.Ct. 1207, 1214 n. 12, 94 L.Ed.2d 434 (1987) (*citing United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121–22, 92 L.Ed.2d 483 (1986); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). We are not able to find a clear expression of legislative intent contrary to the language of the statute here. A fair reading of the Senate Report, that Bradford cites as legislative history, suggests that the committee was far more concerned with the inconsistent application of SCH criterion than it was with which specific factors the Secretary considered. *Clinton,* 10 F.3d at 858. Bradford's argument is further undermined by the fact that "Congress specifically added two factors, travel and weather conditions, that had been considered under the prior regulations, but had not appeared in the regulations; the addition[s] would have been pointless if Congress really thought that it was incorporating *all* the factors that the HCFA or the courts had thought relevant under the prior regulation." *Id.* Similarly, in 1989, Congress added travel time and travel conditions as factors, but again left out physicians' admitting patterns. The natural inference is that Congress has enumerated those factors it thinks are important and left out those it does not think are

important, not that Congress intended the Secretary to consider an expanded list of factors that included physicians' admitting patterns.

In sum, since significant evidence exists supporting the proposition that Congress did not intend to include physicians' admitting patterns among the factors to be considered, we must conclude that the legislative history of the statute does not contain evidence of clear legislative intent that is sufficient to cause us to question the plain language of the statute. Furthermore, since the plain language contains no authority for a Congressional mandate to the Secretary to include physicians' admitting patterns in the regulatory criterion for SCH status, 42 C.F.R. § 412.92(a)(3) is not manifestly inconsistent with 42 U.S.C. § 1395ww(d)(5)(D)(iii)(II).

### B. Are the Regulations Arbitrary and Capricious

Bradford also attacks the regulations as arbitrary and capricious. The Supreme Court has identified several grounds upon which an agency rule can be arbitrary and capricious:

> if the agency [1] relied on factors which Congress has not intended it to consider, [2] entirely failed to consider an important aspect of the problem, [3] offered an explanation for its decision that runs counter to the evidence before the agency, or [4] it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).

■ Bradford first argues that the regulations covering 15–25 mile hospitals are arbitrary and capricious because they run counter to the evidence that was before the agency when they were promulgated. *Motor Vehicle Mfrs. Ass'n.* sets forth the appropriate standard of review in this context:

> A court is not to substitute its judgement for that of the agency. Nevertheless, the

agency must examine the relevant data and articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made" and cogently explain why it has exercised its discretion in a given manner. *Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43, 103 S.Ct. at 2866.

Bradford takes issue with the manner in which the Secretary considered when evidence of market share was relevant for determining SCH status. First, Bradford argues that the Secretary's Task Force assembled to study the SCH status issue recognized that admitting patterns were the best indicator of provider isolation when it concluded that admitting patterns were an "operational measure" that incorporated all other variables. Next, Bradford points out that market share affects a hospital in the same manner irrespective of its proximity to other hospitals. From these premises, Bradford argues that there is no rational basis for the Secretary's choice to consider evidence of market share as relevant in determining whether a 25–35 mile hospital can qualify for SCH status, but not to consider market share as relevant in determining whether a 15–25 mile hospitals can qualify.[6]

The Secretary explained that it chose not to consider market share factors for 15–25 hospitals when drafting the regulation in 1983 because of the

> basic conclusion that hospitals within 25 miles of another hospital were not isolated at all, and were not the only hospitals reasonably available to Medicare beneficiaries, unless seasonal events such as highways blocked with snow for a protracted period of time made them the only hospitals available.

(Koch Aff. at ¶ 13). Of course, this begs Bradford's objection—which is that if the Secretary recognized that market share factors could cause a hospital to be an SCH, and if market share affects hospitals independent of their location, it is irrational to limit the ability to qualify for SCH status based on

---

6. This distinction is embodied in 42 C.F.R. § 412.96(a)(1)(i) which permits a 25–35 mile hospital to qualify for SCH status based on mar-

ket share. 42 C.F.R. § 412.96(a)(2) does not permit consideration of market share for 15–25 mile providers.

market share according to a hospital's proximity to other hospitals.

■ Facially, Bradford's argument is somewhat appealing. If only the 1983 regulations were at issue, there might be some cause to pause. However, by 1989, additional evidence had become available which supported the Secretary's continued adherence to its position in the 1989 regulations. A 1989 study conducted by Systemetrics, which the Secretary had referenced in a comment to the proposed 1989 regulations, showed that only about one percent of all hospitals located within 25 miles of another like facility could meet the market share test. 54 Fed. Reg. 19636, 19651 (May 8, 1989) (proposed regulations). Additionally, the GAO report, on which Bradford has relied elsewhere, observed that hospitals could manipulate the market share test by altering the description of their service area in order to "exaggerate the residents dependence on them for care." *GAO Report, supra.* Thus, there was evidence in 1989 from which the Secretary could conclude that the number of 15–25 mile hospitals that could qualify for SCH status based on market share was simply too small to warrant the administrative pitfalls associated with it. This conclusion was reasonable, especially in light of the potential for abuse of the market share test that had been identified in the GOA Report. We must also be mindful of the fact that our standard of review is limited. We can not invalidate the regulations because we are troubled by the fact that the results they reach impose some hardship, are undesirable or are not ultimately fair in all circumstances. *Lugo v. Schweiker,* 776 F.2d 1143, 1151 (3d Cir.1985).

Line drawing is inherent in the rule making process. There is a rational connection between the evidence and the regulatory choice that was made and therefore the regulation must be upheld. *Motor Vehicle Mfrs. Ass'n.,* 463 U.S. at 43, 103 S.Ct. at 2866–67.

■ Next, Bradford argues that the regulations are arbitrary and capricious because they represents a significant change of prior practice for which the secretary did not provide an adequate explanation, citing *Motor Vehicle Mfrs. Ass'n.,* 463 at 43, 103 S.Ct. at 2866–67. This argument must be rejected for a variety of reasons.

*Motor Vehicle Mfrs. Ass'n.* is inapposite because it involved a total reversal of agency policy without any amendment to the underlying statute.[7] By contrast, the alleged change in agency policy here came in response to significant amendment of the underlying statute by Congress in 1983. *Macon County,* 7 F.3d at 766; *Public Hospital,* 806 F.Supp. at 1486. Additionally, the Secretary's amendment to the regulations was a response to a Congressional comment on the lack of uniformity and objectivity under the old regulations. *Macon County,* 7 F.3d at 766. Bradford is also wrong because the regulations do not represent a significant departure from prior agency policy. Although several appellate decisions had awarded hospitals within 25 miles of other like facilities SCH status based on admittance patterns, the Secretary had never officially acknowledged that these decisions were correct and had continued to officially take the position that such hospitals should not receive SCH status.[8] *Macon County,* 7 F.3d at 766.

---

7. In *Motor Vehicle Mfrs. Ass'n.* the National Highway Traffic Safety Administration had rescinded a requirement that all new vehicles be equipped with passive restraint (automatic seatbelts or airbags) without any change in the statute authorizing the Secretary to promulgate the regulations. See *Motor Vehicle Mfrs. Ass'n.,* 463 U.S. at 33–34, 103 S.Ct. at 2861–62.

8. The documents that Bradford cites are incapable of supporting the argument that the Secretary had ever adopted a policy that physicians' admitting patterns should be given determinative weight when analyzing SCH status for 15–25 mile hospitals. The Task Force Report is a recommendation compiled by several HCFA region-

al directors. It is not a binding statement of official policy. See *Report of the Regional Administrator Task Force On Sole Community Exemptions* (Feb. 28, 1983). I.L. 74–22 specifically takes the position that hospitals within 25 miles of like facilities should not receive SCH status. I.L. 72–22 [1974 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 27,044, p. 10,426. I.L. 78–17 does not represent a reversal of policy because it only states that this information should be furnished by providers seeking SCH status, not that it would be given determinative weight by the Secretary. I.L. 78–17 [1978 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 28,972 p. 9698.

Bradford also argues that the regulations are arbitrary and capricious because the Secretary did not adequately respond to a comment that cast doubt on the propriety of the regulations. The case on which Bradford relies held that an agency's failure to respond to a comment, which if true, would require a change in a proposed rule, could constitute arbitrary and capricious action. *ACLU v. FCC*, 823 F.2d 1554, 1581 (D.C.Cir. 1987) *cert. denied* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). The comment in question here was submitted on Behalf of the Mary Imogene Bassett Hospital and raised the same arguments that Bradford raises. (Administrative Record at 452–7). Since we reject Bradford's arguments, we also find that the comment did not cast such doubt on the propriety of the Secretary's position within the Meaning of *ACLU v. FCC, supra,* as to require a response.

Finally, Bradford complains that the criterion applying to 15–25 mile providers are arbitrary and capricious because they impose a virtually insurmountable barrier to attaining SCH status. First, we note that the uncontroverted evidence shows that three hospitals have been successful under the 15–25 mile hospital criterion. (Aff. of Nancy A. Edwards). Second, the fact that the Secretary has chosen to be chary with the SCH designation for 15–25 mile hospitals is not "absurd" or "implausible," but rather reflects her belief that SCH status should be the unusual exception for such hospitals. This is a permissible interpretation of the statute.

## IV. *CONCLUSION*

An appropriate order follows.

### *ORDER*

AND NOW, this 24 day of December, 1996, for the reasons stated in the accompanying Memorandum Opinion:

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 20] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 24] is GRANTED; and

JUDGMENT is hereby entered in favor of Defendant, Donna E. Shalala, Secretary of the Department of Health and Human Services, and against Plaintiff, Bradford Hospital.