**CLINTON MEMORIAL HOSPITAL, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 90–2075.**

United States District Court, District of Columbia.

Jan. 30, 1992.

Amy E. Hancock, McDermott, Will & Emery, Washington, D.C., for plaintiff.

Kathleen Scully–Hayes, Office of Gen. Counsel, Dept. of Health & Human Services, Washington, D.C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the Court on plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment. For the following reasons, plaintiff's motion will be denied and defendant's cross-motion will be granted.

### I.

Plaintiff Clinton Memorial Hospital ("Clinton") challenges certain Medicare reimbursement regulations promulgated by the Secretary of Health and Human Services ("Secretary") pursuant to Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395ccc. Pursuant to 42 C.F.R. §§ 412.-92(a)(3) & (b)(2), the Secretary denied Clinton "sole community hospital" ("SCH") status under the Medicare prospective payment system for the fiscal years 1985 through 1988. Clinton concedes the decision was proper under the regulations, but challenges the validity of these regulations on several grounds.

### A.

In 1965, Congress enacted legislation, commonly known as the "Medicare Act," which established a federally-funded health insurance program for certain aged, blind, and disabled persons. Social Security Amendments of 1965, P.L. 89–97, 79 Stat. 291 (codified as amended at 42 U.S.C. §§ 1395, *et seq.*). The Medicare Act program provides payment for medical care and services—including inpatient hospital care—to those aged, blind, and disabled

persons who qualify under Title II of the Act. 42 U.S.C. §§ 402, *et seq.* The Secretary administers the Medicare program through the Health Care Financing Administration ("HCFA"). 42 U.S.C. § 1395kk. The Secretary is authorized by statute to "proscribe such regulations as may be necessary to carry out the administration" of the Medicare program. *Id.* § 1395hh.

Under the Medicare program, hospital providers enter into agreements with the Secretary under which the providers promise to render services to Medicare beneficiaries. *Id.* § 1395cc. The hospitals are then reimbursed for the provision of these services.

### 1.

Prior to 1983, a hospital provider was entitled to payment of the lesser of the "reasonable cost" or the "customary charge" of the services provided. 42 U.S.C. § 1395f(b) (1982). Reasonable costs was defined by statute as "the cost reasonably incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." *Id.* § 1395x(v)(1)(A). The Secretary was authorized to promulgate regulations "provid[ing] for the establishment of limits on ... costs ... to be recognized as reasonable." *Id.* § 1395x(v)(1).

Pursuant to the authority granted him under the statute, the Secretary established estimated cost limits on allowable routine costs per day ("Routine Cost Limits"). 42 C.F.R. § 405.460(a)(2) (1982).[1] In addition, in recognition of congressional intent that routine Medicare cost limitations not be applied to the detriment of communities with limited access to hospitals,[2] the Secretary created the SCH exemption to the Routine Cost Limits for "a hospital which, by reason of factors such as isolated location or absence of other hospitals, is

the sole source of such care reasonably available to beneficiaries." *Id.* § 405.-460(e)(1). A hospital that meets the SCH criteria receives higher compensation from the government than hospitals that are not classified as a SCH.

Due to the general nature of the regulation, the HCFA issued two Intermediary Letters ("I.L.") to guide its regional offices in determining whether a particular hospital qualified as a SCH. I.L. 74–22 set out in pertinent part:

> The determination that a hospital is the sole source of hospital services reasonably available to beneficiaries is based on such factors as (1) the normal commuting distance to work for residents of the locality served by the hospital, (2) travel time and availability of public transportation to the nearest like facility, and (3) the extent to which persons travel to other localities for hospital care. Generally, neither a hospital located within a 25–mile radius of a like facility ... can be found to qualify for a sole community hospital exemption.

I.L. 74–22, Medicare & Medicaid Guide (CCH) ¶ 27,044, at 10,425–26 (1974). A subsequent letter further defined the manner in which SCH determinations were to be made. I.L. 78–17 set out in pertinent part that:

> physical isolation of the hospital and its service area, as demonstrated by the absence of reasonably accessible facilities, or isolation of the hospital and its service area due to unusual local circumstances which results in general nonuse of the otherwise closest like facilities by residents in the hospital's service area is the key factor to a determination that a hospital is [a SCH] within the meaning of the regulation.... Examples of unusual local circumstances include, but are not

---

1. On September 30, 1986, section 405.460 was redesignated without substantive change to 42 C.F.R. § 413.30. The Court will reference the regulation herein to section 405.460.

2. The 1972 House Committee Report stated that the Medicare cost reimbursement limits would be inapplicable:
   > where there is only one hospital in a community—that is, where, if the provision were

applied, additional charges could be imposed on beneficiaries who have no real opportunity to use a less expensive, non-luxury institution, and where the provision would be difficult to apply because comparative cost data for the area are lacking.

H.R.Rep. 231, 92d Cong., *reprinted in* 1972 U.S.Code Cong. & Admin.News 4989, 5070.

limited to, adverse topographical conditions, extended periods of adverse weather conditions, and hospital admitting patterns in practice in the hospital's service area.

I.L. 78–17, Medicare & Medicaid Guide (CCH) ¶ 28,972, at 9697 (April 1978).

2.

In 1983, Congress amended the method of paying hospitals under the Medicare program from a system based on retroactive reimbursement to a prospective payment system, under which a provider was to be paid a fixed amount for each Medicare patient as determined by classifications according to "diagnosis related groups." 42 U.S.C. § 1395ww(d)(1)(A). Congress retained, however, the favorable payment schedule for SCHs provided for in the prior method of calculation. Congress defined a SCH in the statute as:

> a hospital that by reason of factors such as isolated location, weather conditions, travel conditions, or absence of other hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to individuals in a geographical area ...

*Id.* § 1395ww(d)(5)(C)(iii).

Pursuant to this specific delegation of rulemaking authority, the Secretary promulgated new SCH regulations which were initially published as interim final rules at 42 C.F.R. § 405.476(b) with a public comment period to follow. 48 Fed.Reg. 39752, *et seq.* (1983). After the notice and comment period, the interim final rules became final rules. 50 Fed.Reg. 234, *et seq.* (1984). In pertinent part, the regulation stated:

> (a) *Criteria for classification as a sole community hospital.* HCFA [Health Care Financing Administration] classifies a hospital as a sole community hospital if it is located in a rural area ... and meets one of the following conditions:
>
> (1) The hospital is located more than 50 miles from other like hospitals.

> (2) The hospital is located between 25 and 50 miles from other like hospitals and meets one of the following criteria:
>
> (i) No more than 25 percent of the residents or, if data on general resident utilization are not available, no more than 25 percent of the Medicare beneficiaries in the hospital's service area are admitted to other like hospitals for care;
>
> (ii) The hospital has fewer than 50 beds and the intermediary certifies that the hospital would have met the criteria in paragraph (a)(2)(i) of this section were it not for the fact that some beneficiaries or residents were forced to seek care outside the service area due to the unavailability of necessary specialty services at the community hospital; or
>
> (iii) Because of local topography or periods of prolonged weather conditions, the other like hospitals are inaccessible for at least one month out of each year.
>
> (3) The hospital is located between 15 and 25 miles from other like hospitals but because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least one month out of each year.

42 C.F.R. § 412.92(a)(3).[3] In 1985, the regulation was redesignated 42 C.F.R. § 412.92 without substantive change. 50 Fed.Reg. 12740, 12756 (1985).

B.

Clinton is a 167–bed public hospital located in the City of Wilmington, in Clinton County, Ohio. It is the only hospital located in Clinton County. Clinton participates as a provider under the Medicare statute, and provides a wide array of medical care, including general medical/surgical, special care obstetrics, pediatrics, and nursery services.

---

**3.** In 1989, the Secretary revised section 412.-92(a)(3) to read that a hospital would qualify as a SCH if "[t]he hospital is located between 15 and 25 miles from other like hospitals but because of local topography or periods of pro-longed severe weather conditions, the like hospitals are inaccessible for at least 30 days in each 2 out of 3 years." 42 C.F.R. § 412.92(a)(3) (1989).

In December 1988, Clinton filed an application with its fiscal intermediary, the Community Mutual Insurance Company ("Community"), requesting designation as a SCH for fiscal years 1985 through 1988. On August 31, 1989, the Secretary denied Clinton's request on the ground that Clinton did not meet the criteria of 42 C.F.R. § 412.92(a)(3). Specifically, the Secretary denied Clinton's application due to the presence of three hospitals which offer short-term acute care services within 25 miles of Clinton,[4] as well as the fact that local topography or periods of prolonged severe weather conditions did not render these hospitals inaccessible for more than one month per year. On February 27, 1990, Clinton appealed its non-SCH status to the Provider Reimbursement Review Board ("PRRB") pursuant to 42 U.S.C. § 1395oo. On June 25, 1990, the PRRB determined it was without authority to decide the legal issue of whether the challenged regulations were valid.

■ A PRRB decision that it lacks the authority to decide a question of law is considered a final agency decision and the provider may, within sixty days, seek judicial review. *Id.* § 1395oo(f). Clinton filed suit on August 24, 1990. Clinton seeks declaratory and injunctive relief as well as sums it claims it is due under the Medicare statute. Clinton sets forth four arguments in support of its motion. First, Clinton contends 42 C.F.R. § 412.92(a)(3) is arbitrary and capricious and therefore invalid because it is contrary to congressional intent and inconsistent with the statutory definition of SCH in the Medicare statute. In addition, Clinton argues the regulation is arbitrary and capricious because the Secretary failed to articulate a reasoned explanation for departing from pre–1983 policies. Second, Clinton maintains 42 C.F.R. § 412.92 is invalid because it violates the APA's notice and comment procedures. Third, Clinton asserts 42 C.F.R. § 412.-92(b)(2), which establishes the effective dates of SCH classification, are arbitrary and capricious because they are contrary to

congressional intent and inconsistent with the statutory definition of SCH. Finally, Clinton claims 42 C.F.R. § 412.92(b)(4) violates the Equal Protection Clause due to the inconsistent treatment given to pre- and post–1983 SCH applicants.

The Secretary has cross-moved for summary judgment. The Secretary contends the regulations do not violate the Medicare Act, the APA, or the Equal Protection Clause.

## II.

■ Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part:

The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment then, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating the absence of any genuine issue of material fact to be determined, and the court must credit the non-movant's evidence and draw all justifiable inferences in its favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513.

■ In cases brought under the provisions of the Administrative Procedure Act, courts are to determine whether agency action is, among other things, "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When Congress explic-

---

4. Greene Community Hospital, in Xenia, Greene County, Ohio, is located approximately 17–20 miles from Clinton. Highland District Hospital, in Hillsboro, Highland County, Ohio, is located almost 25 miles from Clinton. Fayette County Memorial Hospital, in Washington Courthouse, Fayette County, Ohio, is also located almost 25 miles from Clinton.

itly delegates substantive authority to engage in substantive rulemaking and define statutory terms, such terms, upon judicial review, are to be given "legislative effect." *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). In such cases, the reviewing court's task is "the limited one of ensuring that the Secretary did not 'excee[d] his statutory authority,' and that the regulation is not arbitrary and capricious." *Id.* (quoting *Batterton v. Francis,* 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977)).

### III.

Clinton's primary contention is that 42 C.F.R. § 412.92(a)(3) is arbitrary and capricious, and therefore invalid, because it is inconsistent with congressional intent and because the Secretary failed to articulate a reasonable explanation for his choices and failed to state why he departed from prior practices. Clinton contends the Secretary departed from congressional intent by adopting an inflexible distance criterion as the basis for determining SCH status, thereby refusing to consider such relevant factors as physician-admitting practices and the availability of public transportation for hospitals covered by subdivision (a)(3) of the regulation. Specifically, Clinton argues section 412.92(a)(3) is inconsistent with the statutory language of 42 U.S.C. § 1395ww(d), which states that SCH status would be determined by "factors *such as* isolated location, weather conditions, travel conditions, or absence of other hospitals...." *Id.* § 1395ww(d)(5)(C)(iii) (emphasis added). Clinton maintains this language indicates that Congress intended these factors to be an illustrative, rather than a conclusive, list of the factors the Secretary must consider when granting SCH status.

Clinton also claims that because the language of the enabling statute uses language identical to that of the prior regulation, specifically the terms "isolated location" and "absence of other hospitals," Congress must have intended to incorporate these "terms of art" into the statute. Clinton asserts the contemporaneous administrative construction of these terms,

set forth in I.L. 74–22 and I.L. 78–17, was much broader and took into consideration a larger group of factors than does the new regulation. In light of the ambiguity surrounding what Congress intended in using these terms, Clinton contends the Court must parse the enabling statute's legislative history in order to determine congressional intent. Clinton cites to a Senate Finance Committee Report, dated March 23, 1983, which states:

> The committee is concerned that, in determining which hospitals have been eligible for exceptions and adjustments as sole community hospital providers in the past, the Secretary has applied different criteria in different regions of the country, including some which are very narrow and restrictive. Therefore, the committee expects that the Secretary, in making such determinations for sole community providers under the new prospective payment system, will develop and take into account a much broader range of factors relating to beneficiary access to basic hospital services.

S.Rep. No. 23, 98th Cong., 1st Sess. 54, *reprinted in* 1983 U.S.Code Cong. & Admin.News 143, 194. Clinton insists this legislative history clearly evinces Congress' intent to broaden, not restrict, the range of factors to be considered by the Secretary in determining SCH status.

Clinton also points to a report done by the General Accounting Office ("GAO Report") in support of its argument that section 412.92(a)(3) is inconsistent with the legislative history of the enabling statute. Clinton asserts that the GAO Report, entitled "Impact of Medicare Reimbursement Limits on Small Rural Hospitals," set forth that "the applicant's value to the community, as determined through market share factors, was to be considered regardless of the applicant's proximity to other hospitals." Motion for Summary Judgment, at 30. The GAO Report was submitted to Senator Max Baucus of the Senate Finance Committee contemporaneously with the development of 1983 amendments to the Medicare Act, and Clinton asserts it was considered by Congress when it drafted the enabling statute. Clinton therefore claims

the GAO Report is further evidence that Congress intended the Secretary to broaden, rather than restrict, the number of factors to be considered in determining SCH status.

Finally, Clinton contends the regulation is arbitrary and capricious because the Secretary failed to consider such relevant factors as physician-admitting practices and the availability of public transportation, and because the Secretary failed to articulate a reasonable explanation for departing from his pre–1983 policies in promulgating the regulation.

In response, the Secretary contends section 412.92(a)(3) is fully consistent with congressional intent. The Secretary argues the language of the enabling statute, setting forth that SCH status would be determined by "factors such as isolated location, weather conditions, travel conditions, or absence of other hospitals (*as determined by the Secretary*)," 42 U.S.C. § 1395ww(d)(5)(C)(iii) (emphasis added), contains ordinary language which, if read as a whole, expressly states the purpose Congress intended the statute to achieve. The Secretary claims he faithfully followed Congress' express delegation of rulemaking authority, noting that the factors specifically listed in the statute—isolated location, weather conditions, travel conditions, or absence of other hospitals—are all determinative factors set forth in section 412.-92(a)(3). And even if the Court were to find the statutory language ambiguous, the Secretary maintains that the legislative history of the enabling statute is in line with the regulation.

The only courts to have considered this question have split down the middle. *Compare Central Oregon Hospital Dist. v. Sullivan,* 757 F.Supp. 1134 (D.Or.1991) (striking down regulation), *and Mary Imogene Bassett Hospital v. Sullivan,* [1989–2 Transfer Binder] Medicare & Medicaid Guide (CCH), ¶ 37,381 (N.D.N.Y.1988) (same), *with John Fitzgibbon Memorial Hospital v. Sullivan,* Nos. 90–0179, 90–6089 (W.D.Mo. Dec. 11, 1991) (upholding regulation) *and A.O. Fox Memorial Hospital v. Sullivan,* [1990 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 38,364 (N.D.N.Y.1989) (same). In *Central Ore-gon Hospital,* the court found that the terms "isolated location" and "absence of other hospitals" could be interpreted as terms of art based on their usage under the prior regulation, and therefore determined that an examination of the enabling statute's legislative history was necessary. Upon parsing the legislative history, the court found that it "indicates the Secretary should have considered not only the criteria that were used prior to 1983, but also additional new criteria." *Central Oregon Hospital,* 757 F.Supp. at 1140. In addition, the court found that the Secretary had failed to supply a reasoned analysis for its action and failed to explain his departure from his prior practices. Accordingly, the court held the Secretary had acted arbitrarily and capriciously, and "without good reason," in promulgating section 412.92(a)(3). *Id.* at 1145; *see also Mary Imogene Bassett Hospital,* [1989–2 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 37,831, at 19,848 (same).

In contrast, the court in *John Fitzgibbon Memorial Hospital* noted that Congress had "expressly delegated to the Secretary responsibility for giving meaning to the list of terms in Congress' new statutory definition," and found that the regulation was consistent with the plain meaning of the statute. *John Fitzgibbon Memorial Hospital,* Nos. 90–0179, 90–6089, slip op. at 15–16. In addition, the court determined that because Congress had made dramatic changes with its 1983 amendments to the operative provisions of the Medicare Act—in effect overhauling the underlying statute—the Secretary was not required to supply an reasoned explanation for any departure from prior policies or practices. And even if he were, the court concluded that the Secretary had provided a sufficient justification for his actions. *Id.* Nos. 90–0179, 90–6089, slip op. at 15; *see also A.O. Fox Memorial Hospital,* [1990 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 38,364, at 22,069 (holding that "42 C.F.R. § 412.92(a)(3) was not arbitrary, capricious, an abuse of discretion, or otherwise invalid.... The regulation as it existed then addressed every factor the enabling statute deemed relevant in determining whether a

hospital should be afforded sole community hospital status.").

■ Having carefully considered the positions of both Clinton and the Secretary on this matter, the Court finds the position of the Secretary more persuasive. In *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988), the Supreme Court restated the governing standard for courts reviewing challenges to regulations thusly:

> In determining whether a challenged regulation is valid, a reviewing court must first determine if the regulation is consistent with the language of the statute. If the statute is clear and unambiguous that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Id.* at 291, 108 S.Ct. at 1817 (citations and internal quotations omitted). Here, the Court finds the terms of the enabling statute to be unambiguous. The statute clearly lists factors which Congress intended to be used by the Secretary in making SCH determinations, and expressly delegates to the Secretary the authority to define and apply these statutory factors. Clinton's argument to the contrary, that the statute is ambiguous because it contains terms of art based on their usage under the prior regulation, is unavailing. Such an analysis would put the cart before the horse, requiring the Court to consider first not whether the statutory language itself is clear and unambiguous, but whether the language is clear and unambiguous *after* having considered other factors such as the contemporaneous administrative construction of the prior regulation. The Court finds this position inconsistent with the governing principles of statutory construction.

Hence, because the Court finds the terms of the enabling statute to be unambiguous, it need not, as was stated in *A.O. Fox Memorial Hospital,* " 'reconstruct legislator's intentions' by looking towards the statute's legislative history. Rather, the court must determine whether the Secretary followed the clear directive set forth by Congress when he issued the regulation at issue...." *A.O. Fox Memorial Hospital,* [1990 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 38,364, at 22,068. In so doing, the Court must heed the Supreme Court's admonition that "[if an] agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation of the statute." *K Mart Corp.*, 486 U.S. at 292, 108 S.Ct. at 1817.

The regulation at issue here, section 412.-92(a)(3) takes into account the distance between hospitals, weather conditions in the locality, and the accessibility of other hospitals in the area due to topographical or other reasons. As such, the regulation addresses each and every factor set forth in the enabling statute for determining whether a hospital should be afforded sole community hospital status. And because the decision whether to consider additional factors was expressly delegated to the Secretary, there can be no requirement that the Secretary in fact take such additional factors into account. The Court therefore concludes that the regulation is not inconsistent with the plain meaning of the statute.

■ Clinton's argument that the Secretary failed to give a reasoned explanation for his actions and failed to explain his departure from prior practices is equally unavailing. In *Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), the Supreme Court stated that an "agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change." *Id.* at 42, 103 S.Ct. at 2866. Such is not the case here. As Judge Hunter noted in *John Fitzgibbon Memorial Hospital,* "[w]ith its 1983 amendments, Congress made drastic changes to the operative provisions of the Medicare Act—it completely overhauled the Medicare reimbursement scheme." *John Fitzgibbon Memorial Hospital,* Nos. 90–0179, 90–6089, slip op. at 15. The underlying regulation thus had not remained in a state of repose. Congress for the first time provided a statutory definition of SCHs, explicitly listed criteria for the Secretary to consider in making SCH determinations, and expressly delegated to the Sec-

retary the authority to give specific meaning to the aforementioned factors. The Court therefore agrees with Judge Hunter that "[t]his is not a case where the Secretary (or an agency), *sua sponte,* decided to rescind an existing rule or regulation and issue a fundamentally different rule or regulation in its place, while the underlying statute remained largely unchanged." *Id.* Nos. 90–0179, 90–6089, slip op. at 16. The reasoned analysis called for in *Motor Vehicles Mfrs. Ass'n* is not applicable here.

■ In any event, the Court finds that the Secretary did provide a reasoned analysis for his action in promulgating section 412.92(a)(3). In response to a comment that questioned the need to make the criteria for SCH determinations "any more restrictive," the Secretary made the following statement:

> Prior to the interim final rule, the HCFA regional offices granted SCH exemptions using broad general program instructions. These Medicare program instructions are not binding upon the [PRRB] or the courts. Consequently, this system provided insufficient basis for defending the regional office decisions upon appeal.

> We believe that [the regulation] will resolve many of the previous problems associated with SCH designations by providing objective criteria that make it easy for both hospitals and regional offices to distinguish which hospitals may qualify. Additionally, a single set of objective criteria will promote uniformity throughout the nation in designating SCHs. Finally, the regulations provide a basis for adjudicators of SCH appeals to evaluate the appropriateness of HCFA regional office decisions.

49 Fed.Reg. 271 (Jan. 3, 1984). The Secretary clearly set forth his intent to provide for objective criteria that would be easy to apply. The accompanying regulation accomplishes this objective.

Accordingly, the Court rejects Clinton's contention that section 412.92(a)(3) is arbitrary and capricious, and therefore invalid.

## IV.

■ Clinton also contends the enactment of section 412.92 violates the basic requirements of the APA in two respects. Clinton first argues that the regulation is inconsistent with the requirements of the APA because its basis and purpose statement was inadequate. Clinton renews its argument here that the regulation departs from the Secretary's prior practice without setting forth adequate reasoning or explanation. In addition, Clinton contends the Secretary failed to adequately consider or respond to a comment in response to the Notice of Interim Rule made by the Minnesota Hospital Association ("MHA"), which stated in full: "We question the need to make any more restrictive the previous criteria to qualify as a Sole Community Hospital." Clinton asserts the MHA's comment "placed directly before the Secretary the need to address the claim that his new SCH regulations were more restrictive than his prior rule and policy and to consider the alternative of using the prior criteria." Motion for Summary Judgment, at 39.

The Administrative Procedure Act requires the Secretary to consider the comments submitted regarding a proposed rule and to present a "concise general statement" of the rule's "basis and purpose." 5 U.S.C. § 553(c). Long ago, our court of appeals set forth the standard for the basis and purpose statement thusly:

> We do not expect the agency to discuss every item of fact or opinion included in the submissions made to it in informed rule making. We do expect that, if the judicial review which Congress has thought it important to provide is to be meaningful, the "concise general statement of . . . basis and purpose" mandated by [the APA] will enable us to see what major issues of policy were ventilated by the informal proceedings and why the agency reacted to them as it did.

*Automotive Parts & Accessories Ass'n v. Boyd,* 407 F.2d 330, 338 (D.C.Cir.1968).

In promulgating the regulation at issue, the Secretary set forth the statutory definition of SCHs and the factors to be considered by the Secretary in defining SCH status. Then, presumably in response to

the MHA's comment, the Secretary made the following statement set forth in Part II of this memorandum opinion and repeated here:

> Prior to the interim final rule, the HCFA regional offices granted SCH exemptions using broad general program instructions. These Medicare program instructions are not binding upon the [PRRB] or the courts. Consequently, this system provided insufficient basis for defending the regional office decisions upon appeal.
>
> We believe that [the regulation] will resolve many of the previous problems associated with SCH designations by providing objective criteria that make it easy for both hospitals and regional offices to distinguish which hospitals may qualify. Additionally, a single set of objective criteria will promote uniformity throughout the nation in designating SCHs. Finally, the regulations provide a basis for adjudicators of SCH appeals to evaluate the appropriateness of HCFA regional office decisions.

49 Fed.Reg. 271 (Jan. 3, 1984). The Court finds these statements sufficient to satisfy the APA's basis and purpose requirement. As the Court has set forth previously, the Secretary clearly set forth his intent to provide objective criteria that would be easy to apply, and the accompanying regulation accomplishes this objective.

Clinton argues, however, that the Secretary misinterpreted the comment made by the MHA. The Secretary interpreted the MHA's comment as follows: "One Commentator felt that there is no need to establish regulatory criteria for SCHs. This Commentator supported the previous method of handling SCH request." *Id.* Clinton insists this reading of the MHA's comment and the Secretary's response ignores the MHA's concern by failing to respond to the claims that his new SCH regulations were more restrictive than his prior rule and policy and the suggestion that he consider the alternative of using the prior criteria. The Court disagrees. The Secretary's response indicated that the prior criteria were unsatisfactory due to their inherent uncertainty, and concomitantly set forth the Secretary's justification for using ob-jective criteria that would be easy to apply. The Court finds no error here.

## V.

■ Clinton next contends 42 C.F.R. § 412.92(b)(2), which provides that SCH status is not effective until 30 days after the Secretary's written notification in cases in which an application is filed on or after October 1, 1983, is invalid because it is inconsistent with congressional intent. Clinton maintains nothing in statute, the legislative history, prior HCFA practices, or the rulemaking record support the prospective-only effect of the regulation for hospitals submitting applications on or after October 1, 1983. In addition, Clinton notes that in adopting section 412.92(b)(2), the Secretary abandoned his prior practice of making SCH status retroactive with payments beginning with the first cost year for which the hospital was granted SCH status, a practice that was retained under the regulation at issue here for hospitals submitting applications prior to October 1, 1983, *see id.* § 412.92(b)(2)(A),

The Secretary rejects Clinton's contention that the prospective-only effect of section 412.92(b)(2) is not supported by the statute and the rulemaking record. The Secretary points to the preamble to section 412.92(b)(2), in which he responded to a comment concerning the prospective application of the regulation as follows:

> If we were to make the SCH effective date retroactive, we would need to reprocess every inpatient hospital claim submitted for the hospital [for the prior years affected by the retroactive status] and make adjustment payments at a new rate.
>
> It is not in keeping with the basis of the prospective payment system or the concept of budget neutrality to permit retrospective adjustment of Medicare prospective payment rates.

49 Fed.Reg. 271 (Jan. 3, 1984). The Secretary maintains this rationale is fully consistent with the statute and the overall objectives of the Prospective Payment System. The Secretary also argues, citing *Flambeau Medical Center v. Sullivan,* [1991 Transfer Binder] Medicare & Medicaid Guide (CCH), ¶ 38,927

(W.D.Wisc.1990), that to allow a hospital that has waited several years before applying for SCH to obtain retroactive status would entail a "tremendous administrative burden, and would be a waste of agency resources." Memorandum of Points and Authorities in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, at 15.

The Court agrees with the Secretary. The Secretary adequately set forth the reasons for the prospective-only rule in the preamble to section 412.92(b)(2), and the Secretary's rationale is consistent with the objectives of the Prospective Payment System. Clinton's argument to the contrary, to the effect that the Secretary already is required to reprocess every inpatient hospital claim of a SCH applicant where that applicant has successfully challenged the Secretary's denial of SCH status through litigation pursuant to section 412.-92(b)(2)(i)(B), is unavailing. Not all hospitals which are granted SCH status achieve such status through litigation. Hence, the simple fact that the Secretary may be required to reprocess the inpatient hospital claims of *some* hospitals granted SCH status—those whose status is achieved through litigation—does not negate the Secretary's legitimate interest in avoiding the administrative burden of reprocessing the inpatient hospital claims of *all* hospitals seeking SCH status.[5] *See Flambeau Medical Center,* [1991 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 38,927, at 24,936 (allowing a hospital that has waited several years before applying for SCH status to obtain retroactive status would entail a tremendous administrative burden on the Secretary). The Court therefore rejects Clinton's challenge to section 412.-92(b)(2).

## VI.

Finally, Clinton contends 42 C.F.R. § 412.92(b)(4), which provides that those hospitals who were granted SCH status before October 1, 1983 ("Pre–1983 Hospitals") would be "grandfathered" in under the new regulation, violates the Equal Pro-

tection component of the Fifth Amendment. Clinton argues section 412.92(b)(4) provides for disparate and more favorable treatment for pre–1983 hospitals than for those applying thereafter because those hospitals applying for SCH status prior to October 1, 1983 could demonstrate the requisite "isolation" by reference to a variety of factors that are not considered under the new regulation. Clinton also repeats its assertion that Congress intended for the Secretary to use a much broader definition for granting SCH status, and insists that if the Secretary had followed congressional intent, there would be no need for the grandfathering provided for in section 412.-92(b)(4). Clinton therefore concludes with the argument that no legitimate governmental interest exists for grandfathering pre–1983 hospitals under section 412.-92(b)(4).

Federal courts review challenges to economic regulations on equal protection grounds under a deferential standard; the challenged statute or regulation will be struck down only if it "manifests a patently arbitrary classification, utterly lacking in rational justification." *Weinberger v. Salfi,* 422 U.S. 749, 768, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975). Here, the Secretary asserts he had both an administrative interest in grandfathering hospitals that had already received SCH status under the prior regulation—avoiding having to reprocess and reconsider SCH applicants—as well as interest in preserving the status quo for those hospitals that had been granted SCH status. The Court finds these interests sufficient to justify any disparate treatment accorded under section 412.92(b)(4).

## VII.

Plaintiff's Motion for Summary Judgment is denied. Defendants' Motion for Summary Judgment is granted.

---

**5.** In any event, it is worth noting that whether under the provisions of section 412.92(b)(2) or section 412.92(b)(2)(ii)(B), SCH status is effec-

tive 30 days following the initial notice; under no circumstances is SCH approval made effective to some earlier date.